FOR THE DISTRICT OF SOUTH CAROLINA
IN THE CHARLESTON DIVISION

| | |
|---|---|
| JOE M. DENNIS, <br><br> PLAINTIFF <br><br> v. <br><br> OFFICER S. SIMMONS, THE CITY OF GOOSE CREEK POLICE DEPARTMENT, AND THE CITY OF GOOSE CREEK, <br><br> DEFENDANTS. | **COMPLAINT** <br> **(42 U.S.C. § 1983)** <br> **(Jury Trial Demanded)** <br><br> C/A NO: 2:16-cv-534-CWH |

Plaintiff, complaining of Defendants, would respectfully allege and show unto this Court as follows:

**JURISDICTION AND VENUE**

1. This action is an action for money damages brought pursuant to 42 § U.S.C.A. §§ 1983, *et. seq.*, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, statutory law, and Constitution of the State of South Carolina.

2. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A §§ 2201 and 2202.

3. Venue is proper in the Charleston Division.

**PARTIES**

4. At all times relevant to this Complaint, Plaintiff was and is a citizen and resident of Sumter County, State of South Carolina.

5. At all times relevant in the Complaint. Defendant Officer S. Simmons was a patrol officer employed by the City of Goose Creek and the City of Goose Creek Police Department. At all relevant times, Officer Simmons was acting individually, as an employee of the governmental entities, and under color of state law. Defendant Simmons resides within the Charleston Division of this Court.

6. Defendant Officer Simmons is subject to suit in his personal capacity under 42 U.S.C. § 1983.

7. Defendants, City of Goose Creek Police Department and City of Goose Creek, are governmental agencies and/or political subdivisions of the State of South Carolina, existing under the laws of the State of South Carolina.

8. At all times relevant to this Complaint, the agency Defendants operated a police department in Berkeley County under color of law, and employed agents and servants including Defendant Simmons to carry out and conduct their business.

9. During the time period in question, Plaintiff's Constitutional rights were well-established and well-known to Defendant Simmons and to Defendant governmental entities.

10. During the time period set out in the Complaint, Defendant Simmons and the other agents and employees of Defendant governmental entities were operating within the scope and course of their officially assigned and/or compensated duties.

### FACTS

11. On May 23, 2014, Plaintiff was dining at the Golden China Buffet located on St. James Avenue in Goose Creek, South Carolina.

12. Plaintiff, who had been in Goose Creek working construction for several months, had dined at the Golden China Buffet several times in the weeks and months preceding May 23, 2014.

13. Because May 23rd was to be his last visit before leaving the area, Plaintiff asked to speak to the person who he thought was the manager based on his prior visits in order to express his thanks for the restaurant's hospitality.

14. When Plaintiff asked the person working the cash register if he could speak to the manger, she became upset that he did not understand she was the manager.

15. Rather than argue with the cashier/manager, Plaintiff proceeded to select his food and sat down to eat.

16. At no time did Plaintiff hear the cashier or any other employee of the restaurant ask Plaintiff to leave the premises.

17. A short time later, Defendant Officer S. Simmons of the Goose Creek Police Department appeared at Plaintiff's table, and, without any warning or other comment whatsoever, told Plaintiff in a loud voice to put his fork down.

18. Startled, at first Plaintiff was not aware the officer was talking to him.

19. Plaintiff then explained to the officer that he was still eating his meal, but the officer again told him to put down his fork and then ordered Plaintiff to stand up.

20. Plaintiff explained that he had not done anything wrong but agreed to leave.

21. Rather than allow Plaintiff to leave under his own power, the officer wrapped his arm around Plaintiff's neck and placed Plaintiff in a "chokehold."

22. Defendant officer then forced Plaintiff to the door by continuing the "chokehold" and dragging/pushing him towards the door.

23. The officer then placed Plaintiff outside telling him to stay there while the officer returned inside the restaurant.

24. As soon as the officer released his grip on Plaintiff's neck, Plaintiff immediately noticed he was having trouble breathing and that his ability to talk had become impaired.

25. Officer Simmons offered to call EMS for Plaintiff but took no further steps to see to Plaintiff's obvious, serious medical needs.

26. After some discussion with the restaurant's employees and another officer who had arrived on the scene, Officer Simmons then cleared Plaintiff to leave the scene without issuing him a citation or charging him with any crime.

27. At all times interacting with the officer, Plaintiff was cooperative and did nothing to antagonize or threaten the officer's safety, and, Defendant Simmons' use of an unauthorized and potentially deadly method of restraint was without legal justification or cause.

28. Officer Simmons had the care, custody, and control of Plaintiff as he forcibly moved his person from one location to another and did not allow Plaintiff to leave until sometime after he had already injured Plaintiff.

29. As a result of Officer Simmons' use of excessive force, Plaintiff continued to suffer throughout that evening and eventually had to seek emergency medical treatment.

30. Plaintiff was seen at a local emergency room and then admitted into the hospital's Intensive Care Unit where he was treated for "laryngeal trauma with resultant hoarseness, stridor, and near obstruction of laryngeal airway," and a "nondisplaced laryngeal fracture.

31. Plaintiff's injuries were all caused by Officer Simmons' use of force against Plaintiff.

32. As a direct result of the Officer's conduct, Plaintiff suffered all of the above injuries, and also endured substantial loss of income, loss or impairment of earning capacity, out-of-pocket expenses, medical expenses, including physicians, hospital, medicines, physical therapy expenses, rehabilitation expenses, and transportation expenses connected with medical treatment, permanent injuries, disfigurement, alterations of lifestyle, psychological trauma, mental anguish, mental distress, apprehension, anxiety, emotional injury, psychological injury, pain and suffering, and loss of enjoyment of life.

33. Plaintiff is informed and believes that the harms visited upon him were entirely foreseeable, and, for this reason, most if not all law enforcement agencies including Defendants ban or seriously discourage the use of "chokeholds" in all situations except where the use of deadly force is justified.

34. Officer Simmons had no legal justification to use deadly force against Plaintiff.

**FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**

35. Plaintiff reiterates each and every allegation stated hereinabove as if repeated verbatim herein.

36. Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as police officers and/or supervisors who had certain duties imposed upon them with regard to Plaintiff. Additionally, during the time period in question, Defendants were well aware of Plaintiff's constitutional rights, including his right to be free from the use of excessive force and to receive necessary and proper medical care when injured at the hands of law enforcement.

37. Defendants were consciously and deliberately indifferent to the rights of Plaintiff in the following particulars:

    a) in consciously using excessive use of force (physical);

    b) in consciously using more force than reasonably necessary given the facts and circumstances then and there presenting;

    c) In failing to establish appropriate policies regarding hiring, training, supervision, and monitoring of their employees;

    d) If such policies do exist, in consciously failing to implement or enforce such policies;

    e) In failing to conduct proper background checks prior to hiring their employees (to include Officer Simmons);

    f) In consciously failing to take reasonable steps/actions which would have prevented the injuries to Plaintiff;

g)      In consciously failing to follow applicable Federal, State and local policies and procedures;

h)      In consciously failing to set and enforce policies in compliance with South Carolina's minimum standard requirements;

i)      In failing to train, monitor, and/or supervise their employees (to include Officer Simmons);

j)      In consciously failing to recognize the fact that Officer Simmons did not have the proper training to conduct routine police interactions with the public;

k)      In failing to train, monitor and/or supervise their employees with regard to the use of obviously dangerous police tactics;

l)      In consciously failing to train, monitor and/or supervise their employees (to include Officer Simmons) with regard to when to initiate an arrest and when and under what circumstances deadly force may be used;

m)      In failing to use reasonable and appropriate force once Plaintiff was in their custody and control;

n)      In consciously failing to train, supervise or monitor their officers to prevent the use of maneuvers known to pose a substantial risk of serious injury or death;

o)      In consciously failing to train, supervise or monitor their officers to recognize dangerous situations;

p)      In engaging in a pattern and practice of permitting their

officers/employees to use maneuvers that are known to pose an unreasonable risk of harm to citizens;

q) In failing to take the appropriate action after seeing and/or recognizing that Officer Simmons had seriously injured Plaintiff;

r) In failing to secure appropriate and necessary emergency medical care for Plaintiff;

s) In having policies, practices, and customs that were driving force behind the Constitutional deprivations suffered by Plaintiff;

t) In having a persistent and widespread practice of allowing administrators, employees, and officers of Goose Creek and the Goose Creek Police Department to violate their own policies and procedures and in being deliberately indifferent to the practice and custom by failing to enforce policies; failing to properly train; failing to properly discipline; thus creating a culture within Defendant Department wherein violating citizen's civil rights was not only tolerated, but encouraged;

u) In having a persistent and widespread practice of ratifying and condoning the unlawful and illegal activity of administrators, employees, and officers of Defendant Department, thereby allowing the deprivation of Plaintiff's civil rights

38. As a direct and proximate result of the aforementioned acts on behalf of Defendants, Plaintiff unjustifiably suffered - both mentally and physically. Further, as a direct result Plaintiff has suffered ACTUAL, CONSEQUENTIAL, and PUNITIVE

DAMAGES.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, plus punitive damages in an amount to be determined by a competent jury, for the cost of this action, and for such other and further relief as this Court deem just and proper including attorneys' fees and costs as authorized by Federal law.

By:  s/Blair C. Jennings

Blair Jennings, Federal ID 7384
Lauren Felder, Federal ID 11324
Ray Chandler, Federal ID 93
CHANDLER AND JENNINGS, LLC
1060 East Montague Ave. Suite 301
North Charleston, South Carolina 29405
(843)745-4542 (office)
(843)745-4545 (fax)
Attorneys for Plaintiff

Charleston, South Carolina
February 22, 2016